All right, let's go ahead and get the next. All right, our next case is case number 23-20312, Kirby v. Sanchez and Intercontinental Terminals, and we'll begin with Joseph Walker for Sanchez. May it please the Court, we're here to argue, to ask this Court to reverse the ruling of the District Court and render judgment, granting my client's motion to lift the limitation injunction and allow us to try our case in State Court under the Savings and Suicides Clause. Now, in order to get there, we filed three different motions to lift the stake, and each time we filed it, we responded to the Majesty's Judge's rulings. The first motion, he denied the motion because he asked that we should include ITC in the stipulation. So the operative language is we did include ITC and we agreed in that motion, in the stipulation, that we would not enforce an excess judgment against Kirby or against ITC insofar as Kirby might be exposed to liability in excess of the limitation. Okay. Can you explain why the District Court hasn't yet ruled on whether ITC really has a claim or not? You know, Your Honor, that's what our argument is here. We don't believe they have a claim. No, I understand. And there's been a motion to dismiss it. The District Court hasn't really directly addressed that, has it? Well, we filed a motion to dismiss, but that hasn't been ruled on. It's been filed for like 10 months. Why wouldn't we await that? Because we say we usually wait for the District Court to have made a ruling and review the ruling rather than make ourselves the District Court. Well, because on the facts of the case, there is no contract, so there's no evidentiary basis to make any ruling on, and then you just have the sufficiency of their pleading. That's all they have. Well, would it make any sense for us to do a limited remand and ask the District Court to rule on your motion to dismiss and address that issue of ITC and whether they have a claim? Well . . . Because that seems to be critical to the District Court's ruling on the rest of this, on withdrawing the limitation. Well, Your Honor, I think if that happens, we'll just get further delayed. There is nothing that the District Court has that you don't have here. In other words, a motion to dismiss is not going to change the operative facts that you have regarding our stipulation. But you're basically asking us to rule on the motion to dismiss. No, I'm asking to rule on the sufficiency of the stipulation. And the stipulation can be ruled based on the sufficiency of what they're arguing regarding their contribution claim, which doesn't exist. It's not a valid claim, particularly if you go through the history of their argument. When they first started and argued their contribution claim, they said they were entitled to attorney's fees and costs. That was an argument they used and argued constantly. At some point in time, they moved off of that because under the Auburn case, you're not entitled to attorney's fees and costs. Each person is responsible to pay their own costs to defend their liability. So that was also reaffirmed in the Nunley case. So they pivoted. And the next pivot was, well, they had no contract, and we kept arguing in our motions, where's the contract? There is no contract. You have nothing to support your attorney's fees and costs. So the next pivot was, what about equity? Well, we don't—this is an American rule. We don't follow English law. And they didn't follow the four exceptions under the equitable—in order to get equity. So now here's the key issue. So when they shifted off attorney's fees and costs, they actually started to acknowledge that in their responses. That's record 781 Kirby, 1789 ITC. They then took a unique position. They said, okay, well, if you get a judgment in state court, then we can pay ITC the full amount of the current—we can pay the whole judgment. And we can pay the judgment, and Kirby's exposed to an excess judgment above their limitation fund. Well, that's not grounded in any kind of a contract. It's a fanciful, hypothetical scenario. So when you're looking— I guess I'm back on Judge Haynes' first question. If you win on the 12B6 motion, then the fund is adequate, right? Because you've stipulated. Right. If you win on that. That's correct. And that's been pending how long? That's been pending for 10 months, and then, well, it's outside the record. The judge unfiled it recently. So . . . It's not waiting on us or . . . Waiting on a decision from this court. Well, if we remanded it and said, please rule, I think that would get the district court's attention, wouldn't it? Well, it could, yes, but obviously, but also, I maintain that you can rule on the sufficiency of the stipulation. Yeah, but we're a court of appeal. The district court ought to rule first. Well, we're appealing his order regarding our stipulation. That's what we're appealing here. What about Judge . . . was it Judge Bray? Yes. He asked just sort of, if you're so sure they have no claim, why wouldn't you agree to their claim being a priority? On the priority stipulation? Yeah. Well, actually, after we filed this appeal, I mean, and they actually said that was a roadmap to getting to state court. So after we filed this appeal, and our goal is to get to state court, so we're going to try to respond as much as we can. After we filed that appeal, we filed a new stipulation including the priority language. We can supplement the record on that. That was also objected to. So I don't think there's anything that we can file that will not be objected because the ultimate goal is to keep us out of state court. That's the ultimate goal. But yes, we can supplement . . . But just help me clarify, in the magistrate . . . before the magistrate, you were saying that they're joint tort feasors, same tort. But to us, is there a distinction? You now saying they were two different . . . Well, they're different . . . they're different torts, essentially. You have . . . ITC is a plant that blew up and put smoke and toxic chemicals all over the city of Houston, and Kirby was a Jones Act employer. So there's a maritime tort, and then there's a state law tort, and even in a jury . . . The tort alleged against Kirby is that they made your clients keep working and decontaminate the vessels? That's correct. And even on a jury charge, it's going to be fairly complex because in a maritime tort, you have different medical causation standards as opposed to a state law tort where you have actually a stronger, tougher causation standard. So . . . but the position . . . and I think what . . . if we go back to state court, it's not going to change what you all have here regarding the stipulation, because you have to look at their arguments. Their argument is that this is . . . it's a fanciful hypothetical scenario where they They can get us . . . they can give us a check, in other words, hijack our stipulation, get us to violate that stipulation, and that's the basis of why their contribution claim is valid. That's in their language. And I report that 1609 of the record and 49 of Kirby's brief to this court. So if you rule and either . . . if you send it back for the motion to dismiss, I expect at some point in time we'll be back up here again. Or if you rule in the validity of the stipulation, based on their argument, if . . . there is no . . . no fact, there's no case law that supports a hypothetical. I haven't found a case that supports . . . they haven't cited a case that supports a hypothetical that they can pay our stipulation, pay the judgment after a jury verdict, and that we can violate that stipulation, and that makes their contribution claim valid. What's the case that avoids the long line of authority with the DECO that they are presently a claimant and that in this limitations action we can do what you say because you think they're just trying to delay it? What's the case you would point to that allows this exception for us to reach the merits of their claimant? Well, the case that . . . there's one case that this Court dealt with. It was ADM v. Gromark where the Court did find that a party asserting a contribution claim was a single claimant, and they found the contribution claim was not valid. Now in all candidate of the Court, that was based after a summary judgment issue, but in this case, we don't even have a contract. So most of these claims that you're looking at and that they're citing all deal with some kind of contractual right to indemnification. I do see the tension between the Limitations Act and your right under the Savings-to-Suitor, but it's interesting that if this is a big parade of horribles that any time someone can bring a contribution claim and keep you out of state court, where's the authority that in the context of the stay, someone's going to adjudicate the merits of the claim? Well, I think, obviously, the authority generally supports it if you just say the word contribution, that's sufficient to . . . Stop everything. . . . to stop everything, but I think there has to be an analysis at some point in time is what's the validity of that contribution claim? Otherwise, particularly with this argument . . . I mean, if you look at the Gaffney case, where they basically say a party has their ultimate chance to put their best foot forward, and they have not put their best foot forward. They have shifted, pivoted, changed their basis for their contribution claim, and I think at some point . . . But why wouldn't ITC have a claim against Kirby if, in fact, it's similar to, say, a car wreck and then a medical issue? The car wreck may not have been that bad, but then the doctor did such a terrible job on the person, say, that I hit with my car, that they die, let's say, to something really terrible. I shouldn't be sued for that because it was just a slight car wreck. I caused them to have to go to the doctor, but the doctor's the one who messed up. Why wouldn't that be a claim I could make to my co-defendant? I'm not saying I would hit a car, I'm just saying . . . Right. Well, I mean, Kirby's claim is basically they had an explosion that started a plant fire and put all these chemicals. It's kind of an independent tort. If you put a jury charge, the jury's going to have their proportionate responsibility. Kirby's also saying that there were no injuries. Well, I mean . . . He may have been adamant in the hearing about that. Well, they can say there are thousands of injuries that were filed against ITC. It's more like the hypothetical Judge Haynes has asked. Right. I mean, the hypothetical is that ITC, even in a . . . let's say we go back to state district court. The district court finds that Kirby's protected under the limitation. ITC, then, can't go to . . . we can't exercise above and beyond Kirby's . . . the value of their vessel. ITC has an independent claim. They can pay the full amount of the judgment. They can pay the judgment and we can agree to dismiss all parties, but they can't pay . . . we can't accept any more against ITC than what the limitation grants. So, I guess I'm having a hard time seeing that hypothetical just for the basis of the different distinct torts. So I mean, I think you have to get back down to . . . in analyzing this, this court has the authority . . . can certainly look at their contribution claim and our stipulation and determine whether that contribution claim is valid. And if you . . . it's not valid because their number one is no contract that they have a right to assert and it's not valid because their actual argument is that they can get us to violate the stipulation. That's the argument they're making, that we can . . . they can pay the judgment after the jury renders an award and they can violate that stipulation. And the problem with that is, you know, I think frankly it's not really good precedent. I mean, if you . . . if we uphold that, then it's going to cause a lot of problems in terms of how do you craft a stipulation. Or the other problem is somebody could just allege, use the word contribution any time, just . . . or we have a contribution claim. There has to be some sufficiency of their pleading to support that contribution claim. I don't think they've raised that level. I don't think they . . . I don't think they can substantiate adequately a contribution claim. And I'll reserve . . . or I've got . . . Okay. I'll reserve the rest for . . . Thank you. Is there time for a vote? All right. Adam Diamond for Kirby. You may please the Court. My name is Adam Diamond. I represent Limitation Petitioner Kirby Inland-Marine. I'd like to start my time by addressing Judge Haynes' question about why the lower court has ruled on the 12B6 motion. And the answer to that is simple. It was filed after the motion to lift stay was heard, denied, and after appellants filed the objection. So it wasn't on the table at the time of the motions to lift stay, any of the three of them. So there could be no . . . Why shouldn't we remand to the district court to be the first to decide it? I think that by affirming the lower court's order, that is the next step in the process. Because the reason not to remand is the lower court didn't err. And so there's no need to remand because the . . . when the lower court terminated the motion to dismiss, it was so this court could resolve the appeal, and then they can refile their motion to dismiss. And there's no question appellants have asked the court, I believe Judge Haynes asked the question of, aren't you asking us to resolve the motion to dismiss? They absolutely do. On page 42 of their brief, appellants state, quote, it is time for this honorable court to finally dismiss ITC's legally invalid contribution claim. So that is what they've asked the court. Okay, but then why wouldn't we do a limited remand? Because it seems like we're swirling and swirling about this point. Why don't we just get the point, and then we'll have a better answer? I think whether it's a remand to resolve the 12b-6 or affirming the lower court's order that then allows appellants to raise the 12b-6, respectfully, I think it's sort of a distinction without a difference in that as long as there's not a . . . No, I'm saying we hold the case, we do a limited remand, please rule on this, and then send it back to us, then we could rule more timely. They're very concerned about the timing, and I understand that life goes on and you kind of want to get it resolved, so why wouldn't that make any sense? I think that probably would be a fine outcome. It's not something that the appellants have previously asked for, so I haven't looked into it in all that much detail, but I think that probably would be fine. The problem here is the relief that they have urged is the improper relief, which is reversing the lower court and dismissing, at this court's level, the . . . Well, let's flip that and say, I mean, I'm not saying this is the case, but if ITC's claim was completely ridiculous, just completely something that no one's ever done, and la, la, la, why would we need to even consider it, and why wouldn't we say, come on, let's get to the real claims? I think if the claim was something that didn't exist, for example, a cause of action that's not recognized, I do think then the lower court, on proper notice, the proper procedure still has to be followed, because the lower court can't just simply assume a claim to be invalid. The proper procedure would be the court would set that on notice in a hearing, that I, the lower court, am going to dismiss your claim because I think it's invalid, have it be heard, and have it be dismissed. Then once it's dismissed, the stay can be lifted. And if it's in the context of a 12B6, that's fine. If appellants here had filed a 12B6 motion with a conditional motion to lift stay, then the magistrate judge could have taken that up, but that's not what they asked for. Their motions . . . I appreciate your saying you'd like to think of it, because I'm thinking of it, too. The remand, your first point would be, we don't often remand when there's been no error. But your second point is, we are mixing apples and oranges, that the long line of authority relating to these stays tries to not mix. In other words, this is a defensive posture of your clients. It's about a cap. It's not supposed to be about liability. So it would set, at least perhaps, a discordant precedent if, in this action, we were to remand favoring resolution of that. I think that's exactly correct. I'd also point out that in the Otoco II case, because there was two, Otoco was decided, it went on remand, and it came back. In Otoco II, this argument was actually rejected by this Court, and in the Port Arthur case as well. In both those cases, which are cited in our brief, the party seeking to lift the stay, which was the appellee in Otoco II and the appellant in Port Arthur, contended that the contribution claims were not valid. The precise reasoning for why they were invalid was a different argument, but they made the same exact primary argument, that the claims were not valid and therefore should not be considered and don't have to enter stipulations. And in Otoco II, this Court expressly held to the contrary. It held that all claimants have to be considered and must enter stipulations. In fact, all claimants was put in italics for emphasis. It specifically held that contribution and indemnity claims are claimants and must have or predict, the words, language was predict, the outcome of those claims. And so the precedent from this Court is in the context, the limited context of the motion to lift stay, there's not a substantive analysis of which claims will prevail and which claims won't. Was there a motion to dismiss pending in that case that hadn't been decided in the District Court? Can you remind me? I don't know the answer to that, Your Honor. It's not mentioned in the opinion, and it predates the ability to look at those filings. But I think the inference is no, based on the court's, based on the filings of the parties, because I did review the appellee and the appellant's brief, and neither mentions any sort of motion to dismiss. The argument is the same as made by appellants here and was rejected by this Court. What is, I mean, I know you're the ship owner, so you just want 100% protection. That's exactly. You're not ITC. But what would you think is the proper judicial response to the suggestion that this could cause a lot of mischief? Would you say that there's a bad faith exception, for example? There's already procedures in place to deal with it, Your Honor. They could file the 12B6. Yeah. Appellants have raised the sua sponte power of the lower court, and appellants have raised on somewhere between 6 to 10, depending on how you count it, occasions with the lower court, their position that ITC's claim is invalid. The District Court is well aware of that. Magistrate Judge Bray's order specifically says we'll deal with that at a later time. If the Court agreed and believed that this was a bad faith use, it's an improper claim, or to Judge Haynes' hypothetical that it's obvious on its face that this is completely baseless, the Court could exercise its sua sponte powers and set a hearing on proper notice following this Court's guidance and have the hearing. And there is Rule 11, which a party asserting a clearly frivolous claim would be at risk of sanction. So the procedures are already in place to protect against those situations. And contribution and indemnity are clearly valid claims, which is another critical part of this analysis, that there is no daylight between the contribution and indemnity claims asserted by ITC here and those asserted in Otico or Port Arthur. Is this like the car wreck? I think it is. With the doctor? I think it is, completely, in that you have two different acts, although we dispute and disagree that there's different torts. They are different acts, but the harm is the same. And the harm alleged by the appellants is... One injury from two different torts. Correct. The explosion, and then whatever they say you required them to do. Correct. The allegation against Kirby is that we allowed or sent our ships near the explosion, and so they were exposed to toxic chemical. The actual harm alleged is exposure to toxic chemical as a result of the explosion when they were on our boats. Right, I mean, but it's like the car wreck that I imagined. You wouldn't have ever gone to the doctor if you hadn't been in the car wreck. However, the car wreck was not that bad. You were not in that bad of shape until the doctor did this terrible surgery that left you dead or very ill or whatever the right wording is. And so that is why those are two... Yes, they're related to each other, but they are not the same. In fact, I think that this is even closer to being the same tort or joint tort, Fesers, than in that hypothetical, actually. I think our case is stronger for a contribution claim because of the fact that in that hypothetical there's two potential injury occurrences, the accident and the medical procedure. Here we only have one. Yeah, but the thing is, so they do, you know, they create this problem, but then you allegedly created the problem for your people by making them go there. You know, so if there was some hurricane in Louisiana, in New Orleans, and I was told I had to come here, that would be different than if I wasn't, right? That's right. And I do agree that Your Honor's hypothetical shows the contribution claim is valid, but the point I'm trying to make is that the actual harm is one harm. It's the exposure to chemical. There's two potential causes of the harm, which is why they are joint tort, Fesers, but if you assume the facts as pled, obviously. So contribution claim absolutely would stand. Additionally, I... What about this thing about attorney's fees? How would you owe attorney's fees in this case? The potential claim, obviously, would dispute the merits, but would be through the indemnity claim, not the contribution claim. There is case law in this circuit that you can get what's called full indemnity, including attorney's fees, on an indemnity claim in certain circumstances. It has been narrowed over the years, but an example being the difference in conduct or the difference in the nature of the character, and it's basically, as an example, is if a defendant committed a negligent act, the strictly liable defendant can actually get attorney's fees from the negligent, the negligent defendant. LCI Shipp Holdings case out of this court is an example of that. Just as simply as possible, tell me how would it be you'd face an excess judgment above the stipulation? There's multiple ways. I don't think... So the stipulation says that appellants won't enforce a judgment. I don't think ITC paying the judgment voluntarily is enforcing the judgment, so I disagree that that violates that. The indemnity claim, and particularly the attorney's fees, of course, could possibly exceed it. There's also an additional problem that ITC hasn't stipulated to the federal jurisdiction over limitation issues, or that waiving res judicata, which are critical elements of the stipulation as well, and something that cannot be controlled by the appellants. The last point I want to quickly make is we raised a waiver issue, which appeared... What issue? Waiver. Oh, yeah. You did. Yeah, I did. Which appears undecided, or first impression, actually, in this circuit at any level court, and the second to third motions raised by appellants, I think, are the most critical because Magistrate Bray, in denying the second motion, raised two issues, flotilla doctrine and ITC. Appellants' third motion only addressed flotilla. As it related to ITC, they said, we incorporate our prior arguments by reference, and a party should not be allowed to circumvent Rule 72's 14-day requirements by filing the same motion, making the same arguments, to generate a new order and indefinitely extend the time, and I see that my time is up. Thank you. We'll now hear from Marcus Matthews on behalf of the Intercontinental Terminals, ITC. Good morning, Your Honors. Mark Matthews on behalf of Apelli Intercontinental Terminals Company. Before I start, I'd like to recenter for the Court what the appellant's core complaint is. At page 24 of their appellant brief, document 40, they say, the district court at all times possessed but refused to use its inherent authority to dismiss ITC's invalid contribution claim sua sponte. So at its core, their complaint is that the district court has not exercised its discretion in the way that they would like the court to exercise its discretion. It would have been reversible error for the district court to just, out of thin air, dismiss or ignore our claim. The court absolutely has the power to sua sponte dismiss claims, but only after notice and an opportunity to be heard. So if the court had just ignored our claim as the appellant's urge, that would have been reversible error. So what they're complaining about is that by declining, not refusing, but declining at the moment to dismiss our claim and commit reversible error, that that itself is reversible error. Judge Haynes, I think that your hypothetical is exactly spot on. There indisputably was a fire at ITC's facility that released contaminants into the air. But everybody knew it. ITC was working with the Coast Guard, the Texas Commission on Environmental Quality, dozens of regulatory authorities was regularly publishing information about what's available. Coast Guard was communicating with everybody on the channel. And everything had been shut down. Everybody on the ship channel knew about that. The allegations are that Kirby then torted their seamen by directing them out into these contaminants, which in Judge Haynes, your hypothetical, that's exactly the doctor's situation. Yes, let's assume that ITC committed a tort, but these gentlemen were not harmed at that initial release. Where they were harmed is at the second tort when Kirby directed them into a dangerous situation. And in that situation, tort indemnity, tort contribution comes in. There's been a lot of discussion about contribution. There's been very little discussion today about indemnity, which is part of our claim, which is through full tort indemnity, which is fully recognized in this circuit. We're entitled to recover our attorneys' fees and expenses. And our claim on that count grows larger every day. It's larger today than it was yesterday. Do you have thoughts on, just to get this resolved, the validity of your claim, do you have a thought on the remand, whole limited remand? Certainly, Your Honor. As Mr. Diamond pointed out, Judge Bray is well aware of their contention that we don't have a valid claim. Obviously, I think that's absolutely wrong, but on multiple occasions it's been raised. If Judge Bray had any concerns about the validity of our claim, through his inherent authority to manage his docket, he could set us for hearing, hey, I'm considering dismissing your claim. At the one hearing he did have, he sounded pretty impatient. Yeah, he did. He could say, I do have concerns, come in and explain to me why I should not dismiss your claim. He does not have that concern, apparently, because he's declined invitation multiple times to address it. But a motion to dismiss is a little different from a sua sponte dismiss, and so if we did a limited remand on that, the court rules, it comes back up to us. We let you file a supplemental letter brief or whatever, then this will be finally decided. It just feels to me like it's kind of just walking down the path, walking down the path. Doesn't it need to be finally decided one way or the other so it either goes back to state court or it stays in federal court? It's our belief that the appellants have absolutely put the cart before the horse here. If they think that ITC's claim is invalid, they need to get it disposed of. I don't think that they can, but they can't just stamp their feet and say that the court needs to ignore us. ITC is a claimant until ITC is not a claimant. And as this court has said in... Is there a limiting principle, though? Because they keep saying there's a slippery slope here. Any joint feeser can just throw in a contribution claim and the Jones Act seaman can't get their form. If it were a slippery slope, Your Honor, we'd be at the bottom of the hill by now. This exact fact pattern, it has been how limitation actions have played out in this circuit. If it has played out that way so many times, where is the authority that looks at this? That looks at which, Your Honor? A situation where there's strong suggestion that the joint tort feeser doesn't have a contribution claim. Well, Your Honor, I can't, as I'm standing here, point you to a specific case, but there are multiple vehicles through which they could achieve this. What they've done, we believe that they lack standing on their motion to dismiss, and that's what we've argued. But we may be wrong, and that can be decided. They could ask the court for a status conference. Hey, we've got real concerns here. Can we come in and talk to you? Is it relevant legally? They can't implead you in this limitations action, right? Kirby couldn't do that. Kirby did implead us. They filed a 14-C tender against ITC. And then into this . . . Exactly, and so they have . . . Kirby has alleged, well, ITC, you're at fault. We allege Kirby's the problem. So yes, there are many ways to get around this. Well, while you have some time left, the Odenberg's case, line of cases, hold that defending tort offenders in maritime cases generally cannot seek to recover costs and fees from other negligent parties. Why would this binding precedent not preclude your claims against Kirby? Because, Your Honor, that section of the Odenberg's case is discussing contribution. And I concede that in this circuit, on a contribution theory, attorneys' fees are generally not recoverable. The claimants cite to Odenberg's repeatedly, but what they never talk about in Odenberg's is a few paragraphs above that that you just discussed. The Odenberg's court discussed tort indemnity, which is exactly what we're discussing here today. And under tort indemnity, the indemnity is entitled to recover its attorney's fees. And that's why I'm saying that our claim grows larger every day, and that's what puts the limitation fund at risk. I see my time is up, Your Honors. So unless there are any questions, I thank you, the court, for your time. Thank you. All right. We'll hear a rebuttal from Mr. Walker. You know, in response to your question about why can't we just send it back for a motion to dismiss and sort of hold everything, I mean, the problem is this case keeps going further and further and further. We have deadlines. We have discovery deadlines. I mean, if that was to happen, then you'd almost have to stay the proceedings until all this could be resolved. So if we did a limited remand and asked the court to rule promptly and then it comes back to us, why wouldn't you rather have that than have us simply affirm, and then you have to go get the motion to dismiss, and then you have to try to appeal that and so on and so forth, although maybe you just want to keep coming back to New Orleans. No, I don't want to keep coming back to New Orleans, though I like New Orleans. It's a nice trip. But just another question regarding the Otico case that he cited. That actually deals in a contractual issue, and that's why Otico II was decided. It was an issue of contract, and a contribution claim grounded in contract. And Suspante, you know, there's a question about Suspante. Well, I mean, this Court has ruled in the Gaffney case that there's a point in time where a claimant has to put its best foot forward. I don't believe ITC has done so. But you just heard him narrow. He's virtually acknowledging the contribution claim isn't valid, but he's speaking about indemnity here. Well, there's no contract allowing him to have it. There's no contract for indemnity. I mean, generally in a maritime case where you've got somebody like Kirby providing tugboats to the ITC facility, you'd think there'd be an indemnification agreement between the two There is none. Regarding the magistrate's order, one of the concerns about if they ask you to affirm, essentially affirming the magistrate's order, his last order is troubling. It has some, for example, he said attorney's fees and costs will continue to be looked at at a later date. That doesn't need to be looked at anymore. He also says that suggests that we could do a priority stipulation where we somehow another get prior, which we've discussed and basically called them out on that. The other one that's even more troubling, he said we did not stipulate to limit a judgment against ITC. So where is this all going? Are we now going to have to fashion a stipulation that somehow another protects a non-vessel owner, third-party defendant, and stipulate somehow another, a damage model that'll protect them? And that wouldn't work anyway. If you go by their argument, if you were to violate the stipulation, which is what they're saying, to stipulate to a damage, to stipulate or limit our right to recover damages against ITC is just wrong. So in answer to the first question or the issue about motion to dismiss, I guess my concern is how long will that take? When will we ever get to trial and when will our folks be able to get in front of a jury and have their right under savings to suitors? And my concern is this whole use of contribution and the way it's being used in this case is really an example of the tension that the Supreme Court has talked about. And in fact, we thought our last stipulation, in fact, we were comfortable with the last stipulation because we followed the Woolley case, which really protects Kirby, and there somehow or another has to be an analysis regarding this contribution, a claim asserted by ITC in conjunction with the stipulation. I don't think you can separate the two. I think if you have an adequate stipulation, I think it's easy to look at what we have here on the record to determine whether that stipulation protects Kirby. Obviously, I appreciate the concern about the cart before the horse and not getting back and doing a motion to dismiss. I'm concerned that we'll be right back up here again. Okay. Thanks to both sides. The case is now under submission, and that concludes today's oral argument.